**Craton LIDDELL, et al., Plaintiffs,**

v.

**The BOARD OF EDUCATION OF the CITY OF ST. LOUIS, MO., et al., Defendants.**

**No. 72–100 C (5).**

United States District Court, E.D. Missouri, E.D.

Jan. 18, 1991.

William P. Russell, Joseph McDuffie, St. Louis, Mo., for Liddell.

Michael A. Middleton, Columbia, Mo., William L. Taylor, Washington, D.C., Wayne C. Harvey, Caldwell Harvey Hughes McHugh & Singleton, St. Louis, Mo., for Caldwell/NAACP.

Kenneth C. Brostron, Lashly & Baer, St. Louis, Mo., for City Bd.

Michael J. Fields, Bart A. Matanic, Asst. Missouri Attys. Gen., Jefferson City, Mo., John J. Lynch, Asst. Missouri Atty. Gen., St. Louis, Mo., David R. Boyd, Sutherland Asbill & Brennan, Washington, D.C., for State of Mo.

Andrew J. Minardi, Joseph D. Ferry, St. Louis, Mo., for St. Louis County.

Shulamith Simon, Husch Eppenberger Donohue Cornfeld & Jenkins, St. Louis, Mo., court-appointed amicus curiae.

Craig M. Crenshaw, Jr., Jeremiah Glassman, U.S. Dept. of Justice, Civil Rights Div., Washington, D.C., for U.S.

James J. Wilson, St. Louis City Counselor, St. Louis, Mo., for City of St. Louis.

Anthony J. Sestric, Sestric & Cipolla, St. Louis, Mo., for St. Louis Collector of Revenue.

Charles Werner, St. Louis, Mo., for Missouri NEA.

Charles R. Oldham, St. Louis, Mo., for St. Louis Teachers Local Union 420.

Henry D. Menghini, Robert J. Krehbiel, Evans & Dixon, St. Louis, Mo., for St. Louis County School Districts—Affton & Lindbergh.

Darold E. Crotzer, Jr., St. Louis, Mo., for Bayless, Jennings, Normandy & Wellston.

Bertram W. Tremayne, Jr., Tremayne Lay Carr Bauer & Nouss, St. Louis, Mo., for Kirkwood & University City.

Frank Susman, Susman Schermer Rimmel & Parker, St. Louis, Mo., for Ferguson–Florissant.

**500**

George J. Bude, St. Louis, Mo., for Brentwood, Clayton & Hancock Place.

Robert P. Baine, Jr., St. Louis, Mo., for Hazelwood.

Robert G. McClintock, St. Louis, Mo., for Ladue.

Richard H. Ulrich, Summers Compton Wells & Hamburg, St. Louis, Mo., for Maplewood–Richmond Heights.

John Gianoulakis, Kohn Shands Elbert Gianoulkis & Giljum, St. Louis, Mo., for Mehlville, Pattonville & Ritenour.

Donald J. Stohr, James W. Erwin and R.J. Robertson, Thompson & Mitchell, St. Louis, Mo., for Parkway.

Edward J. Murphy, Jr., Garry K. Seltzer, St. Louis, Mo., for Riverview Gardens.

Douglas A. Copeland, Robert W. Copeland, Copeland Gertner & Thompson, St. Louis, Mo., for Webster Groves.

Thomas E. Tueth, Audrey G. Fleissig, Ian P. Cooper, Peper Martin Jensen Maichel & Hetlage, St. Louis, Mo., for St. Louis County Special & Rockwood.

Kenneth V. Byrne, Schlueter & Byrne, St. Louis, Mo., for Valley Park.

## MEMORANDUM OPINION

LIMBAUGH, District Judge.

Vocational education traditionally has been a vital part of the United States public education program. Even private institutions have presented challenging vocational curriculum to interested students. The 12(b) vocational education plan, therefore, was an integral portion of the voluntary plan accepted and implemented by Judge Hungate in the early stages of this case.

By 1983, four schools all well located geographically, provided vocational courses in the greater St. Louis area. North County, South County, O'Fallon in the City and the new West County school each offered a host of attractive vocational pursuits.

Nonetheless, shortly after this Court assumed the duties of this case management on February 1, 1985, it was readily apparent that for a variety of reasons St. Louis was following the national trend showing a decline in popularity of vocational programs. A difference of opinion developed nationwide among the academicians. Some felt vocational interest was waning and the education dollar could be used more effectively elsewhere. Others suggested new approaches to upgrading vocational programs and promoting a revitalized interest.

This Court, therefore, in the mid–1980s being unequipped to make a sound educational decision, was obliged to make an economic one with respect to the 12(b) part of the voluntary plan.

The four schools alluded to were overstaffed and offered duplicate programs to only a modest number of interested vocational students all at a huge cost. To illustrate, at one point, O'Fallon was capable of housing almost 3,000 students, but only had an enrollment of 600 to 700 students and could have accommodated the 2,600 some odd total student enrollment in all four schools.

West County was ordered closed with the possibility of closing the South County vocational program as well.

After appeals and decisions concerning the implementation of a long-range magnet program, the Court determined O'Fallon could best be used in a magnet project rather than continued usage offering traditional vocational education programs.

Following that decision, the only entities interested in accepting a vocational program were and are the Special School District in St. Louis County, and the City of St. Louis Public School District.

As O'Fallon was being converted to a magnet school, the City Board, in order to implement a vocational program, would be required to revamp an existing school for vocational pursuits or acquire or build a facility. Fortunately for it, the Special District could still use North and South Tech schools or perhaps even reopen West County Tech should enrollment make it economically feasible.

After hearings and conferences with representatives of the parties and their attorneys, the Court had several options. One was to continue with a blend of operation

with control vested both in the City Board and the Special School District. Another was to allow either entity to handle the entire program or each to handle their own. A final potential was for the Court to disengage vocational education from the case because of the diminishing student enrollment as compared with the total school population.

The dismal history of the 12(b) Vocational Education Plan is a familiar story;[1] therefore there is no point in reciting it again in more precise detail than just outlined. Suffice it to say that as a desegregation remedy and alternative education option, vocational education under the 12(b) Plan has failed miserably. Enrollments are at rock bottom and racial numbers remain unchanged. There has been a total disruption of students' lives and education.

Last January this Court exercised one of its options and reluctantly created a dual vocational education system as a way to keep a secondary vocational education system operating under the purview of the City Board. Both the City Board and the Special School District would independently operate vocational education high schools.[2] All metropolitan St. Louis high school students would be free to choose which school they wanted to attend. Theoretically, "choice" would force the school districts to provide innovative and desirable courses, better staffing, and improved facilities in order to attract students. In essence, the two school districts would compete for students. The Court hoped that this strategy would foster positive changes in the present vocational education system.

A year has passed and instead of positive changes all indications are that the vocational education system continues to be in serious trouble. The Special School District appears to be headed in the right direction and is working cooperatively with the Metropolitan Coordinating Council (MCC) in making improvements with staffing and course selection.[3] The City Board is headed in the opposite direction.

In all fairness to the City Board, the Court knew that it would initially be at a disadvantage. The City Board advised the Court that a two-year transitional period was necessary in which to get Southwest renovated[4] and a new vocational education program implemented. The Court expected reasonable renovation costs for Southwest as well as minimal transitional costs for the two-year interim period. The Court also had hopes of reviewing a well-conceived, progressive vocational education implementation plan. None of these things have occurred.

Instead, the City Board has responded in a way that suggests time and money is of no consequence. It relocated programs to Vashon that virtually have no student enrollment.[5] Furthermore, several of these programs (after a two year stint at Vashon with little or no enrollment) will not be relocated to Southwest. Nevertheless, the City Board has submitted a capital transitional budget for Vashon (1990–1992) of over 1.6 million dollars.[6] The total cost for 1990–91 alone, for educating approximately 450[7] city students in a City Board operated

---

1. For a recapitulation of the vocational education dispute, *see Liddell XI*, 822 F.2d 1446 (8th Cir.1987) and *Liddell V*, 677 F.2d 626 (8th Cir. 1982). *See also* Court Order L(2719)90.

2. Certain restrictions would continue to exist in order to facilitate and maintain racial balance in the schools.

3. Special School District's Vocational Education Implementation Plan, L(3069)90, MCC's response thereto, L(3116)90, and Special School District's reply, L(3131)90.

4. Since O'Fallon was being converted into the math/science/technology magnet high school (Gateway), Southwest was chosen as the site for a new city vocational education high school.

5. *See* attached MCC current enrollment data, marked as Exhibit A.

6. *See*, L(3000)90 and L(3014)90.

7. There are, in fact, only approximately 450 St. Louis City vocational education students as of December 1990. Of this number only 214 attend city board operated schools at Vashon and O'Fallon and in West County by agreement with the Special School District. The remaining 210 students already attend Special School District schools in North and South County.

facility is over 8.6 million dollars. The cost per pupil for educating these children exceeds $16,500.00 annually. This is several times greater than the average per pupil cost of educating a regular or magnet student.

The City Board's Phase IV Vocational Education Plan is unacceptable to this Court. It calls for the resurrection of a four-year program to be housed in a $16,000,000.00 renovated Southwest High School. The target enrollment is 800 students in grades 9—12. This plan is nothing more than a costly continuation of the abysmal situation in which city vocational education students have been suffering for the last decade.

There are no real changes in the curriculum. The Plan presents generic descriptions of programs and a listing of course titles. There is no evidence of a needs assessment study or staffing and student input. In fact, the City Board admits its Phase IV vocational education program is purposely devoid of a curriculum plan which details educational objectives, skills and job/career focuses. Instead, the City Board has opted for continuous curriculum development, i.e. annual program revisions.

Such a methodology is precisely at the heart of the inadequacies present in the current system district wide. Minimal annual revisions are to be expected, but not the major changes that school administrators force upon staff, parents and students every year. There is no consistency of curriculum and no continuity of programming to foster a sense of stability within the school district. Chaos reigns each year because no one knows what to expect or to do. Supplies, equipment and textbooks are not ordered until the last minute, and often are not in place until well into the school year. With regard to the City Board's Phase IV vocational education plan, the Court also is bewildered by the City Board's ability to put a price tag on such a vague plan. How can the City Board design a building and provide an equipment budget without a specific academic agenda. Does not curriculum have a significant impact on equipment selection and building design? The City Board evidently recognized the shortcomings in its Phase IV Plan (undoubtedly criticism by other parties assisted in the enlightenment) and has recently filed a request to file a revised Phase IV vocational education plan. The City Board wishes to file a revised plan in approximately six months. It avers that due to the invalidation of the April 1990 capital improvements bond issue, no money presently exists to continue the court-mandated capital improvements projects.[8] Southwest High School is to be utilized as a regular high school through 1992–93. Meanwhile, only a minimal number of vocational education programs will be offered. After the April 1991 (resubmitted) capital improvements bond issue election, the City Board states its "financial picture will be clearer," and consequently, it will be better able to reconsider its vocational education recommendations for 1992–93 and renovations for Southwest. Therefore, it seeks permission to file a revised Phase IV vocational education plan on or before May 1, 1991 (an interim status report to be filed on or before February 1, 1991).

What the City Board seeks is another delay in facing a difficult decision. It has called a new bond issue election for April 1991 should the 1990 issue continue to be invalidated. In the event the 1990 and 1991 bond issues are unsuccessful, it would appear the school district may be undercapitalized and unable to meet its vocational education goals. The chances of this situation improving, therefore, are dependent on the April 1991 bond issue election, and/or the potential for the Missouri Supreme Court validating the April 1990 bond issue election.

The Court is unable to wait further to determine the Board's financial capacity for operating a vocational program. There is more to consider than just a six-month

---

**8.** *See* City Board motion for Approval of Extension of Capital Improvements Program, L(3135)90. (The Court has just learned that the Missouri Supreme Court has agreed to hear the appeal of the case in which the 1990 bond issue election was invalidated by lower courts. No date has been set for arguments and an ultimate decision may not be handed down quickly.)

delay in filing a revised plan. A six-month delay in filing means several months of quarreling before the Court can make a final decision. Then at least one year, probably two, before a site can be renovated to accommodate a vocational education program. It means several more years of uncertainty and chaos in students' lives.

What if the bond issue does not pass or what if the 1990 bond issue is finally invalidated by the Missouri Supreme Court? [9] Not a single pleading filed by the City Board addresses this situation. Although Board officials suggest they are prepared to consider tough fiscal times the Court is concerned that the lack of funds could hamper the Board's implementation of a vocational program as it currently contemplates. Obviously, the lack of funds would delay implementation.

Unfortunately the Court determines that the interests of the City Board in protecting its "turf" can no longer prevail. The city students, limited in numbers as they are, need a vocational education program, and they need it now. The only entity capable of providing a viable on-going vocational education program to city students is the Special School District.

Effective with the 1991–92 school year, the Special School District shall be designated the Area Vocational Technical School (AVTS) for the entire metropolitan St. Louis area; i.e. city and county.[10] The City Board shall contract with the Special School District for the provision of vocational education services to city students. Section 178.490 R.S.Mo. As a sending district, the City Board shall pay a tuition fee [11] and transportation costs pursuant to the provisions of § 178.510 R.S.Mo. and all applicable rules and regulations. Transportation costs shall be reimbursed from the state school monies fund as provided in § 163.161 R.S.Mo. and all applicable rules and regulations. The City Board will immediately cease all work associated with a vocational education program at Vashon and/or Southwest and begin preparations for dismantling its secondary vocational education system. All vocational education staff and programs except for Gateway staff and programs shall return to their originating districts effective with the 1991–92 school year.[12] Vocational students currently enrolled in O'Fallon will be given the opportunity to transfer to a similar program in a Special School District site for the 1991–92 school year. Students electing to do so will be assigned by Special School District prior to the acceptance of new 1991–92 students. Each district shall reemploy its current and returning staff to the fullest extent possible utilizing all seniority rights and privileges. Equipment shall return with the appropriate program to the originating district. As the City Board will no longer operate secondary vocational education programs, it will no longer need the equipment which accompanied relocated Special School District programs, except those relocated to O'Fallon for use in the Gateway High School. Therefore, the equipment shall return with the appropriate program to the originating district, with the originating district responsible for moving costs. The City Board shall dispose of its excess vocational education equipment in accordance with state and federal rules and regulations.

**9.** Given the existing uncertainty and time constraints, it is difficult for the Court to wait on a final ruling by the Missouri Supreme Court as to the validity of the 1990 bond issue election, or the upcoming April 1991 similar bond issue election. Although lower courts have invalidated the 1990 election, the Supreme Court could reverse. If it does, funding could be available after a lengthy bond issue is implemented. This would moot the need for the April 1991 election. Nevertheless, should that election be successful, similar funding also could ultimately be available. However, if both proposals fail, funding is in jeopardy.

**10.** The State Board of Education shall immediately take the necessary steps to revoke the City Board's AVTS designation and revise the Special School District's AVTS designation.

**11.** *See* Exhibit B which shows the current vocational education student tuition is $10,089.00 (per pupil). This figure includes state/federal reimbursement and is substantially less than the present cost of educating a city vocational education student.

**12.** Staff and programs may return immediately if students' needs can be otherwise met.

The Court has reviewed the Special School District's first revised 1990 vocational education implementation plan, L(3131)90. Although the Court was initially unimpressed with the Special School District's vocational education program,[13] the Special School District now appears to be more positively committed to providing quality vocational education programs to all metropolitan St. Louis secondary students. Its implementation plan is solid with definite goals, objectives and ideas for future programs. It is acceptable, but for a few minor changes. In Section VI, the Special School District speaks of "voluntary cooperation" with the city and county districts regarding recruitment and hopes to establish an advisory committee regarding future program offerings. It is vitally important that the sending districts be involved in the decision making process so that they feel encouraged to recommend to their students attendance at one of the vocational education high schools. If the sending districts do not support the Special School District, the enrollment numbers will continue to plummet.

The Special School District shall establish a curriculum and recruitment advisory committee composed of the superintendents of each of the sending districts. This advisory committee shall be chaired the first year by the Special School District's Assistant Superintendent for Vocational Education, with the chair rotating on a regular basis (as determined by the committee). This committee shall be charged with, but not limited to, the responsibility of reviewing program curricula and recruitment strategy and making recommendations for changes. In Section VII, the Special School District notes that "[f]ull day students *may* be given instruction in traditional academic areas such as English, math, social studies, sciences, and physical education." (emphasis added). Full-day students *will* be given the appropriate instruction in the traditional academic areas. Vocational students are no less deserving of a quality academic education.

13. *See* Order L(2719)90, pages 5–6.

Finally, pursuant to Section XI, a special grievance procedure is established for city-to-county transfer students. There will no longer be any distinction between students due to residency. All vocational education secondary students are to be treated alike. They are all coming from a sending district and are all entitled to the same rights, privileges and education. A St. Louis city student is no different from a Ladue student or a Riverview Gardens student. Since no specialized grievance procedure is set up to distinguish between students of the various county districts, one will not be set up to set apart city students from county students. A Special School District student is a Special School District student no matter which district he or she resides in.

The Court further suggests that the Special School District in cooperation with the Superintendent Advisory Committee and State Board of Education study the possibility of establishing racially balanced attendance areas. Such a study could prove beneficial in achieving a greater degree of integration at the vocational education schools. Breaking down the St. Louis metropolitan area into perhaps three racially balanced areas along school district boundaries, if possible, would create a data base from the student population racial mix and place of residence. This data base could provide useful information regarding access to vocational education programs, participation levels and integration levels.

The Metropolitan Coordinating Council (MCC) and its functions shall continue as described in court order L(2719)90. It appears that the MCC and the Special School District have etched out a cooperative working relationship. The Court would like to see such cooperation continue. The only change to the MCC membership shall be that the City Board representative should be the Superintendent of the St. Louis City Public Schools or his/her designee.

As stated before, the Court's decision to dismantle the City Board's vocational education system is a difficult one. The City Board's motion plus fiscal and time consid-

erations left the Court with no other alternative. The Court is fully aware of the fact that jurisdiction may be questionable in light of the appeal of court order L(2719)90 that is currently pending. However, since "settlement talks" in the appellate court have gone on for approximately one year and oral arguments have yet to be set, it is highly probable that the appeal could last another year or so before a final decision is rendered. The Magnet Plan appeal took over two years and the uncertainty during that time caused problems which are only now being addressed. A two to three year period of uncertainty would absolutely cripple vocational education services for both the City Board and the Special School District. Even a shorter delay, as contemplated by the City Board in its motion, is unacceptable to the Court. *Liddell V* and *Liddell XI* empower this Court to impose any remedy at any time it feels necessary to rectify the continuing constitutional violation being suffered by the vocational education students in metropolitan St. Louis. *Liddell V,* 677 F.2d 626, 636 (8th Cir.1982), *cert. den.* 459 U.S. 877, 103 S.Ct. 172, 74 L.Ed.2d 142 (1982) and *Liddell XI,* 822 F.2d 1446, 1455 (8th Cir.1987). Since this Court retains jurisdiction over the vocational education issues, it "may take appropriate action at any time *sua sponte* or upon a motion of any party if implementation of the 12(b) plan does not bring about the anticipated results." *Liddell V,* at 636. Furthermore, this Court is vested with the broad remedial authority to impose any remedy it deems necessary to eliminate the proven constitutional violations found in paragraph 12(b). *Liddell V,* at 636, n. 21; *Liddell XI,* at 1455, n. 18.

A year ago this Court, with great reservation, made one last try at formulating a vocational education plan which would allow the City Board to operate a vocational education system. The present motion undeniably demonstrates the City Board's inability to carry out the court's order now and most probably in the near future. Another vocational education hearing is pointless, and would only serve to prolong the agony of uncertainty which plagues the current vocational education system.

This Court has taken what it believes to be the only appropriate action under the circumstances. Black and white children of the metropolitan St. Louis area deserve a quality integrated vocational education system now; not in two, three or ten years. The Special School District is willing, ready and able to comply with the Court's directive.

It is time to close the doors on vocational education under the City Board and open the doors wider for the Special School District.[14]

14. Although this may be an unfortunate result, it is not a harsh one given the ten-year decline in vocational education interest and the modest interest of city students today.

Vocational education student enrollment:

1981

| | | |
|---|---|---|
| City | | |
| O'Fallon | 2,428 | 2,428 |
| Special School District (SSD) | | |
| North County | 1,300 | |
| South County | 996 | 2,296 |
| Total City and SSD | | 4,724 |

March 1985

| | | |
|---|---|---|
| City | | |
| O'Fallon | | |
| City students | 435 | |
| County students | 64 | 499 |
| Special School District (SSD) | | |
| North County | | |
| City students | 44 | |
| County students | 500 | 544 |
| South County | | |

EXHIBIT A
ST. LOUIS PUBLIC SCHOOLS VOCATIONAL STUDENTS BY HOME DISTRICT 12–13–90
VASHON

| Program/Location | County Residents | | City Residents | | Total | |
|---|---|---|---|---|---|---|
| | B | W | B | W | B | W |
| Accounting | 4 | 1 | 4 | – | 8 | 1 |
| Auto Body | – | – | – | – | – | – |
| Auto Mechanics | 3 | 1 | 5 | 1 | 8 | 2 |
| Auto Parts/Auto Machinists | – | – | – | – | – | – |
| Building Service Mechanics | 2 | – | 6 | 1 | 8 | 1 |
| Chemical/Industrial Lab Technology | – | – | – | – | – | – |
| Child Care | 8 | 1 | 2 | – | 10 | 1 |
| Clerical | 10 | 1 | 8 | 2 | 18 | 3 |
| Commercial Art | 3 | – | 2 | – | 5 | – |
| Communications Equipment Repair | 1 | – | 2 | 1 | 3 | 1 |
| Community Based Banking * | 3 | 1 | 12 | 3 | 15 | 4 |
| Computer Based Technology | 1 | – | 2 | – | 3 | – |
| Computer Data Processing | 7 | – | 22 | – | 29 | – |
| Cooperative Marketing/Distri. Ed. | – | – | 3 | – | 3 | – |
| Culinary Arts | 8 | 3 | 7 | 1 | 15 | 4 |
| Data Entry | 12 | 1 | 14 | 2 | 26 | 3 |
| Drafting | 3 | – | 7 | – | 10 | – |
| Dry Cleaning | 8 | – | 9 | – | 17 | – |
| Electronics | 1 | – | – | – | 1 | – |
| Health Services | 3 | – | 9 | 1 | 12 | 1 |
| Cooperative Marketing | – | – | – | – | – | – |
| Industrial Machine Repair | – | – | – | 1 | – | 1 |
| Citicorp * | 1 | – | 12 | – | 13 | – |
| Metal Processing | – | – | – | – | – | – |
| Pre-Engineering | – | – | – | – | – | – |
| Secretarial | 1 | – | 4 | – | 5 | – |
| | | | | | | |
| TOTAL | 79 | 9 | 130 | 13 | 209˙ | 22 |
| | 88 | | 143 | | 231 | |
| | 90% | 10% | 91% | 29% | 90% | 10% |

| WEST | | | | | | |
|---|---|---|---|---|---|---|
| Construction Carpentry | 5 | 9 | 8 | 7 | 13 | 16 |
| Cosmetology | 11 | 7 | 12 | – | 23 | 7 |
| Electrical Trades | 15 | 7 | 3 | 1 | 18 | 8 |
| Graphic Arts | 5 | 3 | 8 | 1 | 13 | 4 |
| Plumbing | 4 | 3 | 6 | – | 10 | 3 |
| Tech Vo Prep | 24 | 2 | 13 | 2 | 37 | 4 |
| Woodwork Design/Manufacturing | 5 | 2 | 3 | 3 | 8 | 5 |

|  | | |
|---|---|---|
| City students | 84 | |
| County students | 402 | 486 |
| West County | | |
| City students | 33 | |
| County students | 257 | 290 |
| Total SSD | | 1,320 |
| Total City and SSD | | 1,819 |

December 13, 1990

|  | | |
|---|---|---|
| City (students in Vashon, O'Fallon and West County) —See Footnote No. 5 | 214 | 214 |
| Special School District (SSD) | | |
| City students enrolled in South and North County | 210 | |
| All other South and North County students | 1,268 | 1,478 |
| Total City and SSD | | 1,692 |

| Program/Location | County Residents B | W | City Residents B | W | Total B | W |
|---|---|---|---|---|---|---|
| TOTAL | 69 | 33 | 53 | 14 | 122 | 47 |
| | 102 | | 67 | | 169 | |
| | 68% | 32% | 79% | 23% | 72% | 28% |

**O'FALLON**

| Program/Location | County Residents B | W | City Residents B | W | Total B | W |
|---|---|---|---|---|---|---|
| Aeromechanics | 1 | 2 | 1 | – | 2 | 2 |
| Aviation Maintenance Technician | 4 | 15 | 3 | – | 7 | 15 |
| TOTAL | 5 | 17 | 4 | – | 9 | 17 |
| | 22 | | 4 | | 26 | |
| | 23% | 77% | 100% | | 35% | 65% |
| GRAND TOTALS | 153 | 59 | 187 | 27 | 340 | 86 |
| | 212 | | 214 | | 426 | |
| | 72% | 28% | 87% | 23% | 80% | 20% |

\* Community Based Programs

12/13/90  TOTAL ENROLLED SUMMARY  LSTTON

| | NORTH B | W | OFALLON B | W | SOUTH B | W | VASHON B | W | WEST B | W | TOTAL B | W |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ACC | | | | | | | 4 | | | | 4 | |
| AOM | | | 1 | | | | | | | | 1 | |
| AIR | 1 | | | | | 6 | | | | | 1 | 6 |
| AUB | 2 | | | | | 4 | | | | | 2 | 4 |
| AUM | 2 | | | | 1 | 14 | 5 | 1 | | | 8 | 15 |
| AMH | | | | | | | | | | | | |
| APM | | | 3 | | | | | | | | 3 | |
| BSM | 4 | | | | 1 | 9 | 6 | 1 | | | 11 | 10 |
| CIT | | | | | | | | | | | | |
| CCA | 5 | | | | 1 | 6 | 2 | | | | 8 | 6 |
| CLR | | | | | | 8 | | 2 | | | 8 | 2 |
| COM | 4 | | | | 2 | 6 | 2 | | | | 8 | 6 |
| CER | | | | | | | 2 | 1 | | | 2 | 1 |
| CBB | | | | | | | 12 | 3 | | | 12 | 3 |
| ATC | | | | | | | 2 | | | | 2 | |
| CDP | 5 | | | | 12 | 10 | 22 | | | | 39 | 10 |
| CAR | | | | | | | | | 8 | 7 | 8 | 7 |
| GDE | | | | | | | 3 | | | | 3 | |
| COS | 8 | 2 | | | 4 | 2 | | | 12 | | 24 | 4 |
| QFO | | | | | | | 7 | 1 | | | 7 | 1 |
| CHM | 2 | | | | | | | | | | 2 | |
| DAT | | | | | 8 | 3 | 14 | 2 | | | 22 | 5 |
| DSL | 2 | | | | | | | | | | 2 | |
| ENG | 1 | | | | 5 | 4 | 7 | | | | 13 | 4 |
| DRY | | | | | | | 9 | | | | 9 | |
| ELC | | | | | | | | | 3 | 1 | 3 | 1 |
| ELT | 3 | | | | 1 | 2 | | | | | 4 | 2 |
| GPO | | | | | | | | | 8 | 1 | 8 | 1 |
| MOA | 5 | | | | 6 | 3 | 9 | 1 | | | 20 | 4 |
| ICE | | | | | | | | | | | | |
| IMM | | | | | | | | 1 | | | | 1 |
| CMI | | | | | | | 12 | | | | 12 | |
| MCH | | | | | | 4 | | | | | | 4 |
| MPR | | | | | | | | | | | | |
| ORN | 1 | | | | 1 | 6 | | | | | 2 | 6 |
| PLB | | | | | | | | | 6 | | 6 | |
| PRE | | | | | | | | | | | | |
| OFF | 1 | 1 | | | 5 | 1 | | | | | 6 | 2 |
| PUB | 2 | 3 | | | | | | | | | 2 | 3 |
| SEC | | | | | | | 4 | | | | 4 | |
| SME | 1 | | | | 1 | 2 | | | | | 2 | 2 |
| TVP | 1 | | | | 6 | 15 | | | 13 | 2 | 20 | 17 |
| WLD | 3 | | | | | | | | | | 3 | |

508

| | NORTH | | OFALLON | | SOUTH | | VASHON | | WEST | | TOTAL | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | B | W | B | W | B | W | B | W | B | W | B | W |
| CAB | | | | | | | | | 3 | 3 | 3 | 3 |
| TOTAL | 53 | 6 | 4 | | 54 | 97 | 130 | 13 | 53 | 14 | 294 | 130 |
| | 59 | | 4 | | 151 | | 143 | | 67 | | 424 | |
| | 90% | 10% | 100% | % | 36% | 64% | 91% | 9% | 79% | 21% | 69% | 31% |

City Residents (Does not include Interdistrict Transfers)

12/13/90     TOTAL ENROLLED SUMMARY     LSTTON

| | NORTH | | OFALLON | | SOUTH | | VASHON | | WEST | | TOTAL | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | B | W | B | W | B | W | B | W | B | W | B | W |
| ACC | | | | | | | 4 | 1 | | | 4 | 1 |
| AOM | | | 1 | 2 | | | | | | | 1 | 2 |
| AIR | 3 | 15 | | | 1 | 8 | | | | | 4 | 23 |
| AUB | 11 | 18 | | | 2 | 18 | | | | | 13 | 36 |
| AUM | 23 | 24 | | | 7 | 48 | 3 | 1 | | | 33 | 73 |
| AMH | | | | | | | | | | | | |
| APM | | | 4 | 15 | | | | | | | 4 | 15 |
| BSM | 23 | 26 | | | 8 | 32 | 2 | | | | 33 | 58 |
| CIT | | | | | | | | | | | | |
| CCA | 29 | 9 | | | 17 | 8 | 8 | 1 | | | 54 | 18 |
| CLR | | | | | | | 10 | 1 | | | 10 | 1 |
| COM | 7 | 12 | | | 5 | 12 | 3 | | | | 15 | 24 |
| CER | | | | | | | 1 | | | | 1 | |
| CBB | | | | | | | 3 | 1 | | | 3 | 1 |
| ATC | | | | | | | 1 | | | | 1 | |
| CDP | 43 | 19 | | | 29 | 12 | 7 | | | | 79 | 31 |
| CAR | | | | | | | | | 5 | 9 | 5 | 9 |
| GDE | | | | | | | | | | | | |
| COS | 10 | 18 | | | 6 | 12 | | | 11 | 7 | 27 | 37 |
| QFO | | | | | | | 8 | 3 | | | 8 | 3 |
| CHM | 15 | 4 | | | | | | | | | 15 | 4 |
| DAT | | | | | 12 | 7 | 12 | 1 | | | 24 | 8 |
| DSL | 10 | 9 | | | | | | | | | 10 | 9 |
| ENG | 15 | 8 | | | 4 | 5 | 3 | | | | 22 | 13 |
| DRY | | | | | | | 8 | | | | 8 | |
| ELC | | | | | | | | | 15 | 7 | 15 | 7 |
| ELT | 14 | 11 | | | 3 | 15 | 1 | | | | 18 | 26 |
| GPO | | | | | | | | | 5 | 3 | 5 | 3 |
| MOA | 25 | 14 | | | 17 | 17 | 3 | | | | 45 | 31 |
| ICE | | | | | | | | | | | | |
| IMM | | | | | | | | | | | | |
| CMI | | | | | | | 1 | | | | 1 | |
| MCH | 3 | 14 | | | 1 | 9 | | | | | 4 | 23 |
| MPR | | | | | | | | | | | | |
| ORN | 2 | 17 | | | | 15 | | | | | 2 | 32 |
| PLB | | | | | | | | | 4 | 3 | 4 | 3 |
| PRE | | | | | | | | | | | | |
| OFF | 14 | 5 | | | 2 | 18 | | | | | 16 | 23 |
| PUB | 10 | 17 | | | | | | | | | 10 | 17 |
| SEC | | | | | | | 1 | | | | 1 | |
| SME | 4 | 9 | | | 2 | 8 | | | | | 6 | 17 |
| TVP | 59 | 46 | | | 24 | 45 | | | 24 | 2 | 107 | 93 |
| WLD | 6 | 6 | | | | | | | | | 6 | 6 |
| CAB | | | | | | | | | 5 | 2 | 5 | 2 |
| TOTAL | 326 | 301 | 5 | 17 | 140 | 289 | 79 | 9 | 69 | 33 | 619 | 649 |
| | 627 | | 22 | | 429 | | 88 | | 102 | | 1268 | |
| | 52% | 48% | 23% | 77% | 33% | 67% | 90% | 10% | 68% | 32% | 49% | 51% |

County Residents including Interdistrict Transfer City Residents

12/14/90       TOTAL ENROLLED SUMMARY      LSTTON

| | NORTH B | W | OFALLON B | W | SOUTH B | W | VASHON B | W | WEST B | W | TOTAL | |
|-----|---|---|---|---|---|---|---|---|---|---|---|---|
| ACC | | | | | | | 1 | | | | 1 | |
| AOM | | | | | | | | | | | | |
| AIR | 1 | | | | 1 | | | | | | 2 | |
| AUB | | | | | | | | | | | | |
| AUM | 1 | | | | 3 | 1 | 1 | | | | 5 | 1 |
| AMH | | | | | | | | | | | | |
| APM | | | 1 | | | | | | | | 1 | |
| BSM | 3 | | | | 2 | | 1 | | | | 6 | |
| CIT | | | | | | | | | | | | |
| CCA | 2 | | | | 11 | | 1 | | | | 14 | |
| CLR | | | | | | | 2 | | | | 2 | |
| COM | 1 | | | | 3 | | | | | | 4 | |
| CER | | | | | | | | | | | | |
| CBB | | | | | | | 3 | | | | 3 | |
| ATC | | | | | | | | | | | | |
| CDP | 7 | | | | 18 | | 5 | | | | 30 | |
| CAR | | | | | | | | | 1 | | 1 | |
| GDE | | | | | | | | | | | | |
| COS | | | | | 5 | | | | 2 | | 7 | |
| QFO | | | | | | | | | | | | |
| CHM | | | | | | | | | | | | |
| DAT | | | | | 3 | | 3 | | | | 6 | |
| DSL | | | | | | | | | | | | |
| ENG | | | | | 1 | | 2 | | | | 3 | |
| DRY | | | | | | | 4 | | | | 4 | |
| ELC | | | | | | | | | 3 | | 3 | |
| ELT | 1 | | | | | | | | | | 1 | |
| GPO | | | | | | | | | 1 | | 1 | |
| MOA | 3 | | | | 5 | | 1 | | | | 9 | |
| ICE | | | | | | | | | | | | |
| IMM | | | | | | | | | | | | |
| CMI | | | | | | | 1 | | | | 1 | |
| MCH | 1 | | | | | | | | | | 1 | |
| MPR | | | | | | | | | | | | |
| ORN | | | | | | | | | | | | |
| PLB | | | | | | | | | | | | |
| PRE | | | | | | | | | | | | |
| OFF | 3 | | | | 2 | | | | | | 5 | |
| PUB | 1 | | | | | | | | | | 1 | |
| SEC | | | | | | | | | | | | |
| SME | | | | | | | | | | | | |
| TVP | 5 | | | | 8 | 1 | | | 5 | | 18 | 1 |
| WLD | | | | | | | | | | | | |
| CAB | | | | | | | | | | | | |
| TOTAL | 29 | | 1 | | 62 | 2 | 25 | | 12 | | 129 | 2 |
| | 29 | | 1 | | 64 | | 25 | | 12 | | 131 | |
| | 100% | % | 100% | % | 97% | 3% | 100% | % | 100% | % | 98% | 2% |

Interdistrict Transfer Students (included in County Resident Totals)

---

## EXHIBIT A SUMMARY

As of December 13, 1990:

| | |
|---|---|
| Total vocational education enrollment (City and County) | 1,692 |
| Total City vocational education enrollment in City Board operated schools (Vashon, West County and O'Fallon) | 214 |
| Total City vocational education enrollment (City Board operated schools and Special School District schools) | 424 |
| Total County vocational education enrollment (City Board operated schools and Special School District schools) | 1,268 |

510

**ROBERT E. BARTMAN**
Commissioner of Education

## DEPARTMENT OF ELEMENTARY AND SECONDARY EDUCATION
P.O. BOX 480
JEFFERSON CITY, MISSOURI 65102

November 5, 1990

Dr. Ronald Rebore
Superintendent of Schools
Special School District of St. Louis County
12110 Clayton Road
Town and Country, Missouri  63131

Dear Ron:

Thank you for your letter of September 18, 1990, regarding the per
capita cost of programs offered to resident and non-resident students in
the Special School District of St. Louis County.

Members of our School Finance Section have reviewed the cost figures you
have submitted and have determined that in compliance with Section
162.940, RSMo, the following tuition charges you have submitted have been
approved by the Missouri Department of Elementary and Secondary
Education.

The approved amounts for tuition charges for all out-of-state students
and all non-resident and all resident students over twenty-one years of
age are:

| | |
|---|---:|
| Autistic | $ 17,874 |
| Educable Mentally Handicapped | 7,932 |
| Severely Handicapped | 11,382 |
| Learning Disabled | 9,724 |
| Behavior Disordered | 12,519 |
| Speech/Language Impaired | 12,217 |
| Auditorially Impaired | 13,325 |
| Orthopedically Handicapped | 15,103 |
| Vocational Education | 10,089 |

Dr. Ronald Rebore
Page 2
November 5, 1990

Also, the following rates which were determined by backing out all categorical state and federal funding are approved for non-resident students residing within the State of Missouri:

| | |
|---|---|
| Autistic | $ 9,962 |
| Educable Mentally Handicapped | 3,380 |
| Severely Handicapped | 6,451 |
| Learning Disabled | 6,516 |
| Behavior Disordered | 8,474 |
| Speech/Language Impaired | 8,888 |
| Auditorially Impaired | 8,801 |
| Orthopedically Handicapped | 9,301 |
| Vocational Education | 7,039 |

If members of our staff can be of further assistance, let us know.

Good wishes.

Sincerely,

Robert E. Bartman
Commissioner of Education

c: Vic Slaughter
John Allan
John Heskett
Debbie Parsons
Frank Drake
Fred Linhardt

## ORDER

In accordance with the memorandum filed herein this date,

IT IS HEREBY ORDERED that the Special School District shall be the sole provider of a secondary vocational education program to all metropolitan St. Louis students under the auspices of the 12(b) Plan. The Special School District shall provide these services as presented to the Court in its first revised 1990 Vocational Education Implementation Plan, L(3131)90, as modified by the Court.

IT IS FURTHER ORDERED that the Metropolitan Coordinating Committee's (MCC) budget shall continue to be funded in the same manner as always. Its structure and responsibilities shall continue as mandated in this order and order L(2819)90.

IT IS FURTHER ORDERED that the City Board's motion to file a revised Phase IV vocational education plan, L(3147)90 be and is DENIED. However, the City Board may at a future date, whenever it can show this Court it has the financial resources and capability to implement a limited vocational education program, request implementation of such a program.

IT IS FURTHER ORDERED that the City Board's vocational education transitional budget, L(3014)90, be and is DISAPPROVED. The City Board shall resubmit a transitional vocational education budget for 1990–91 only. This 1990–91 transitional budget shall clearly and completely itemize actual costs as reflected in L(3014)90. The Court will then determine the approved budget and fiscal responsibility. Since the Court already possesses an extensive collection of responses to the City Board's initial filing of a vocational education transitional budget, the response time to the resubmitted 1990–91 transitional vocational education budget is strictly limited to five (5) days. Responses shall contain only new facts relevant to the resubmitted budget. The City Board shall file its 1990–91 transitional vocational education budget on or before February 23, 1991.

IT IS FURTHER ORDERED that in addition to the MCC's annual 12(b) progress report, the Special School District shall file an annual report containing enrollment data for each school (by grade, by program and by race), enrollment data for each school by district, programs operating at each school, and a brief description of proposed changes for the next school year. Both reports shall be filed on or before

512

June 30 annually until further notice of the Court.

IT IS FURTHER ORDERED that this Court retains jurisdiction of this action for all purposes including the entry of such additional orders as may from time to time be necessary and proper.

GILBERT/ROBINSON, INC., Plaintiff,

v.

CARRIE BEVERAGE–MISSOURI, INC., and Carrie Beverage, Inc., Defendants.

No. 85–2471 C (5).

United States District Court, E.D. Missouri, E.D.

Feb. 28, 1991.

